**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:09-CR-572-HEA |
| | ) |
| ANTOINE S. REED, | ) |
| | ) |
| Defendant. | ) |

**CHANGE OF PLEA**

**BEFORE THE HONORABLE HENRY E. AUTREY**
**UNITED STATES DISTRICT JUDGE**

**JUNE 9, 2010**

**APPEARANCES:**

For Plaintiff:     Michael A. Bert, AUSA
                   **OFFICE OF U.S. ATTORNEY**
                   111 South Tenth Street, 20th Floor
                   St. Louis, MO  63102

For Defendant:     Gilbert C. Sison, Esq.
                   **ROSENBLUM SCHWARTZ ROGERS GLASS, P.C.**
                   120 S. Central Avenue, Suite 130
                   Clayton, MO  63105

*REPORTED BY:*     *Gayle D. Madden, CSR, RDR, CRR*
                   *Official Court Reporter*
                   *United States District Court*
                   *111 South Tenth Street, Third Floor*
                   *St. Louis, MO  63102*
                   *(314) 244-7987*

2

1       (Proceedings started at 12:13 p.m.)

2       (The following proceedings were held in open court and

3  with the Defendant present.)

4          THE COURT:  This is the matter of United States of

5  America versus Antoine S. Reed, Case No. 4:09-CR-572-HEA.  The

6  matter is now before the Court on Notice of Change of Plea,

7  and the parties have in that regard provided to the Court a

8  document entitled Plea Agreement, Guidelines Recommendations,

9  and Stipulations, which consists of 19 pages.  Let the record

10  further reflect that the Defendant is now present in open

11  court with counsel, Mr. Gilbert Sison, and the Government is

12  present through Mr. Michael Bert.

13         Mr. Sison, on behalf of the Defendant, are you ready

14  to proceed?

15         MR. SISON:  Yes, Your Honor.

16         THE COURT:  Mr. Bert?

17         MR. BERT:  Yes, Your Honor.

18         THE COURT:  Will you swear in the Defendant?

19      (Defendant sworn by the clerk.)

20                              EXAMINATION

21  BY THE COURT:

22  Q    Would you state your full name for the record?

23  A    Antoine Samyell Reed.

24  Q    And now, Mr. Reed, did you hear the statement that I just

25  made?

3

1   A     Yes, sir.

2   Q     Is that a true and correct statement of why we are in

3   court today?

4   A     True.

5   Q     All right.  And do you understand, though, that before I

6   can accept your plea of guilty there are some questions I have

7   to ask you to be sure your plea is valid, okay?

8   A     Yes, sir.

9   Q     All right.  So as we go along, if I say something and you

10  don't hear me, let me know and I'll speak louder.  If I say

11  something and you don't understand me, let me know that as

12  well and I'll rephrase it, and if you need to talk with your

13  lawyer at any time, let me know that and I'll give you that

14  opportunity, okay?

15  A     Okay.

16  Q     All right.  Also, keep in mind that you've taken an oath

17  to answer all questions truthfully, which means your failure

18  to do so could result in the Government coming back against

19  you with a new indictment for perjury, all right?

20  A     Yes, Your Honor.

21  Q     All right.  How old are you?

22  A     I'm 30 years old, Your Honor.

23  Q     And how far in school have you gone?

24  A     To the ninth grade, Your Honor.

25  Q     Do you have your GED?

4

1    A     Yes, Your Honor.

2    Q     And when did you get your GED, Mr. Reed?

3    A     2006, I think --

4    Q     All right.

5    A     -- Your Honor.

6    Q     Very good.  Do you have any difficulty hearing?

7    A     Excuse me?

8    Q     Do you have any difficulty hearing?

9    A     Slight.

10   Q     All right.  If my voice trails off and if you're not

11   hearing me really well, let me know.  You know, if I'm talking

12   and you can't hear me, just let me know, all right?  Interrupt

13   and say, "I can't hear you.  Speak up or something," okay?

14         All right.  Do you have any difficulty speaking or

15   understanding English?

16   A     No, Your Honor.

17   Q     All right.  Have you used or taken any kind of medication

18   before coming to court today that might keep you from

19   understanding what's going on in court today?

20   A     No, Your Honor.

21   Q     Have you used any alcohol or drugs before coming to court

22   today?

23   A     No, Your Honor.

24   Q     Have you used any alcohol or drugs within the last 36

25   hours?

5

1   A      No, Your Honor.

2   Q      Have you ever been treated for or diagnosed as having any

3   type of mental illness or mental disease?

4   A      Yes, Your Honor.

5   Q      And when was that?

6   A      Umm, when I was -- I think when I was like 11 maybe and

7   when I was in my twenties.

8   Q      What was the diagnosis?

9   A      Depression.

10  Q      All right.  And was that the same diagnosis when you were

11  around 11 as well as in your twenties?

12  A      Yes, Your Honor.

13  Q      All right.  And on either of those times, were you

14  prescribed medication to take?

15  A      Yes, Your Honor.

16  Q      And did you take it?

17  A      Yes, Your Honor.

18  Q      When's the last time you took any medication for any

19  depression?

20  A      Maybe -- maybe two or three years.

21  Q      Why'd you stop taking the medication?

22  A      I guess I'm -- to be honest with you, I guess I probably

23  felt I didn't need it anymore --

24  Q      All right.

25  A      -- but I can honestly say that I probably was wrong.

6

1   Q    All right.  How are you feeling today?

2   A    I've felt better; I can say that.

3   Q    Okay.  You feel better today than you have been?

4   A    No.  I said I've felt better.

5   Q    Oh, when you were taking the medication?

6   A    Yeah.  Yeah, I mean, yeah, I've been depressed lately.

7   Q    Okay.  All right.

8   A    But it's probably more so because of my situation,

9   though.

10  Q    Okay.  All right.  All right.  Does the way you're

11  feeling affect your ability to understand what's going on and

12  why you're here today or anything?

13  A    I have to say I'm not sure.  I'll probably say no.

14  Q    Okay.  All right.  All right.  So you're good to go ahead

15  with your plea of guilty here today?

16  A    Yes, Your Honor.

17          THE COURT:  Okay.  All right.  Do you know of any

18  reason, Mr. Sison, why the Court should not conclude that your

19  client is competent to proceed at this time?

20          MR. SISON:  No, Your Honor.

21          THE COURT:  Mr. Bert?

22          MR. BERT:  No, Your Honor.

23          THE COURT:  All right.  Let the record reflect that

24  upon the examination of the Defendant and upon inquiry of

25  counsel as well as the Court's observation of the Defendant

7

1   here in open court in response to its questions, the Court

2   concludes that the Defendant is competent to proceed at this

3   time.

4   Q     (By The Court) Now, Mr. Reed, have you had enough time to

5   go over your case and talk about it with your lawyer?

6   A     Yes, Your Honor.

7   Q     Are you satisfied with the advice that he has given you?

8   A     Yes, Your Honor.

9   Q     Has he answered all of your questions for you fully,

10  completely, and to your satisfaction?

11  A     Yes, Your Honor.

12  Q     Is there anything that you wanted to know about your case

13  or needed to know about your case that you're still confused

14  about?

15  A     No, Your Honor.

16  Q     Is there anything that you needed to know about your case

17  or wanted to know about your case that you still don't

18  understand?

19         THE DEFENDANT:  Can I talk to my attorney for a

20  second?

21         THE COURT:  Sure.  Go right ahead.

22     (Attorney and Defendant conferring.)

23         MR. SISON:  Judge, in response to your questions

24  regarding representation, just for the record, Mr. Fein was

25  representing Mr. Reed prior to me taking on the case.  For the

8

1    record, I came on the case because Mr. Reed was unhappy with

2    how Mr. Fein represented him, and I think that was some of the

3    hesitation in some of the answers to his question.  So that

4    being said, to preserve the record, I think Mr. Reed did have

5    issues with the way Mr. Fein represented him, and as such, I

6    was brought onto the case.

7    Q    (By The Court) All right.  All right.  Are you satisfied

8    now with the work that Mr. Sison has done?

9    A    Yes, Your Honor.

10   Q    All right.  And with Mr. Sison on the case, some of the

11   things that you might have had issues or concerns with in

12   relation to your case, have those things been resolved now to

13   your satisfaction with Mr. Sison?

14   A    Yes, Your Honor, some of them.  Some of them, yes, Your

15   Honor.

16   Q    All right.  Are there any aspects of your case that you

17   still don't understand or you're still confused about even

18   though Mr. Sison has been working on it diligently for you?

19   A    Yes, there's stuff I still really don't fully understand,

20   but I'll just say, yes, Your Honor, I understand.

21   Q    All right.  Are you satisfied with what Mr. Sison has

22   done for you?

23   A    Yes, Your Honor.

24   Q    Were there any witnesses that you wanted him to contact

25   for you or that he should have contacted for you that he

9

1  didn't contact?

2  A    No, Your Honor.

3  Q    Was there any investigation that you wanted him to do for

4  you in the case or that he should have done for you in the

5  case that he didn't do?

6  A    No, Your Honor.

7  Q    Was there any information that you wanted him to get from

8  the Government regarding your case or that he should have

9  gotten from the Government regarding your case that he didn't

10  get?

11  A    No, Your Honor.

12  Q    All right.  Now, Mr. Fein was on your case for a while,

13  and then Mr. Sison came on.  The things that you had talked to

14  Mr. Fein about in relation to the questions that I just asked

15  you about witnesses and investigations and information -- did

16  you have any issues with him regarding any of those things,

17  stuff that you wanted him to do or investigation you wanted

18  him to do or witnesses that you wanted him to contact before

19  Mr. Sison came on?

20  A    No, no witnesses, but some investigations, though.

21  Q    All right.

22  A    Not witnesses.

23  Q    All right.  And with regard to the investigative type

24  things, did you convey and discuss those things with Mr. Sison

25  after he came on and started representing you?

10

1    A    Yes, Your Honor.

2    Q    All right.  And are you satisfied with the work that he's

3    done for you in regard to those things since he's been

4    representing you in the case?

5    A    Yes, Your Honor.

6    Q    Okay.  Was there anything that you wanted Mr. Sison to do

7    for you that he failed to do or refused to do as your lawyer?

8    A    No, Your Honor.

9    Q    All right.  Were there things that Mr. Fein -- that you

10   wanted Mr. Fein to do for you that he failed to do?

11   A    Yes, Your Honor.

12   Q    All right.  And are those things that you also talked to

13   Mr. Sison about?

14   A    Yes, Your Honor.

15   Q    And did Mr. Sison follow through and take care of those

16   things for you?

17   A    Yes, Your Honor.

18   Q    Okay.  Do you have any complaints against him as your

19   lawyer in any way -- Mr. Sison?

20   A    No, Your Honor.

21   Q    Are you satisfied with the work that he's done for you?

22   A    Yes, Your Honor.

23   Q    All right.  All right.  I guess it's kind of clear from

24   the questions that I've asked and the responses that you've

25   given that you did have some complaints about Mr. Fein as your

11

1   lawyer?

2   A    Yes, see, because the problem is -- can I speak frankly?

3   The problem is that they represent Scott Rosenblum and that's

4   who I hired, so when -- you know, when you speak of like my

5   attorney, that's -- technically, that's who my attorney is;

6   they just represent him, so --

7   Q    Okay.

8   A    -- so like half the time, yeah, maybe half the time, no,

9   but even though it was two different people representing, but

10  initially, it was Mr. Rosenblum who was my attorney, you know,

11  so that's why I've had a lot of hesitations in answering.

12  Q    Okay.  All right.  I understand now.  I understand now.

13  All right.  I see where you're going.  Okay.  So when you --

14  when you or your people, whoever contacted the lawyer for you,

15  they talked to Scott Rosenblum?

16  A    Yes, sir.  Yes, Your Honor.

17  Q    And got him involved in the case, right?

18  A    Yes, Your Honor.

19  Q    And then Mr. Fein and Mr. Sison work with Mr. Rosenblum,

20  and they've been working with you, and now Mr. Sison

21  predominantly, I think, from what I can gather, has been

22  working with you predominantly or mostly after you talked with

23  Scott Rosenblum and had Mr. Fein on for a little while, right?

24  A    Yes, Your Honor.

25  Q    Okay.  All right.  That being the case, are you satisfied

12

1    with everything that's happened between you and Mr. Sison and

2    what Mr. Rosenblum's office has done for you overall?

3    A    Yes, Your Honor.

4    Q    Okay.  All right.  All right.  And do you understand then

5    that if you go ahead with your plea of guilty here today it

6    means that you're giving up your right to a trial by jury?

7    A    Yes, Your Honor.

8    Q    And did you talk that over with your lawyer?

9    A    Yes, Your Honor.

10   Q    All right.  And you understand that the Constitution and

11   laws of this nation guarantees you the right to have your case

12   decided by a jury of 12 impartial citizens?

13   A    Yes, Your Honor.

14   Q    And after your discussions of that with your lawyer, you

15   understand that when you plead guilty here today it means

16   you're giving up that right to a trial by jury?

17   A    Yes, Your Honor.

18   Q    All right.  Is that what you want to do today?

19   A    Yes, Your Honor.

20   Q    All right.  Do you understand, though, that if you did go

21   to trial you would be presumed innocent and it would be the

22   obligation of the Government to prove you guilty beyond a

23   reasonable doubt by competent evidence?

24   A    Yes, Your Honor.

25   Q    And do you understand that you would not be required to

13

1    put on any kind of evidence at any time to prove yourself

2    innocent?

3    A    Yes, Your Honor.

4    Q    Do you also understand that if you were to go to trial in

5    the case you would have the right to confront any and all

6    witnesses that the Government might have against you?

7    A    Yes, Your Honor.

8    Q    And furthermore, you would be able to cross-examine those

9    witnesses as they testified in open court, under oath, and in

10   front of a jury?

11   A    Yes, Your Honor.

12   Q    And do you likewise understand that you would be able to

13   object to any and all evidence that the Government might

14   attempt to introduce against you at the trial?

15   A    Yes, Your Honor.

16   Q    And do you further understand then that if you went to

17   trial in the case you would have the right to testify or not

18   testify, it would be your choice?

19   A    Yes, Your Honor.

20   Q    And do you understand that if you decided that you did

21   not want to testify in the case the fact that you did not

22   testify could not be used against you in any way?

23   A    Yes, Your Honor.

24   Q    And do you also understand that if you went to trial you

25   would have -- if you wanted to presented evidence in your own

14

1   defense you could but there's no requirement that you present

2   any kind of evidence?

3   A     Yes, Your Honor.

4   Q     And do you also understand that if you go ahead with your

5   plea of guilty here today and if I accept your plea of guilty

6   I will enter a judgment finding you guilty beyond a reasonable

7   doubt and I will impose a sentence on some future date?

8   A     Yes, Your Honor.

9   Q     And do you understand that whatever sentence I impose is

10  entirely up to me?

11  A     Yes, Your Honor.

12  Q     And do you understand that that is true even though you

13  might have some agreement between yourself and the Government

14  on things relating to sentencing?

15  A     Yes, Your Honor.

16  Q     All right.  And do you also understand, Mr. Reed, that in

17  going ahead with your plea of guilty here today it means

18  you're giving up your right to not incriminate yourself under

19  the Fifth Amendment of the Constitution because you will have

20  to admit the facts that establish a basis for the crime as

21  well as admit the crime itself?

22  A     Yes, Your Honor.

23  Q     And is that what you want to do here today?

24  A     Yes, Your Honor.

25  Q     All right.  In relation to the charges that bring you

15

1   here today, have you had the opportunity to review the

2   indictment in the case with your lawyer?

3   A    Yes, Your Honor.

4   Q    And as a result of that review, are you satisfied that

5   you understand everything in the indictment?

6   A    Yes, Your Honor.

7   Q    Do you have any questions about anything in the

8   indictment?

9   A    No, Your Honor.

10  Q    All right.  And are you also aware of the range of

11  punishment that applies to the charges in the indictment, the

12  minimum sentence and the maximum sentence for the charges?

13  A    Yes, yes, Your Honor.

14  Q    And did you talk that over with Mr. Sison?

15  A    Yes, Your Honor.

16  Q    And as result of that, are you satisfied that you

17  understand what the range of punishment is for the charges?

18  A    Yes, Your Honor.

19        THE COURT:  All right.  For the record, would you

20  tell us what the ranges are, Mr. Bert?

21        MR. BERT:  Your Honor, as to Count I, possession of

22  cocaine base with the intent to distribute, the maximum

23  penalty is up to life imprisonment, the minimum is 10 years'

24  incarceration, and/or a fine of up to not more than four

25  million dollars or both such imprisonment and fine.  Further,

16

1    a period of supervised release of not less than five years.

2          As to Count II, being a previously convicted felon in

3    possession of a firearm, up to 10 years' incarceration, a fine

4    of not more than $250,000, or some combination of imprisonment

5    and fine, and further, a period of supervised release of not

6    more than three years.

7          Further, understanding that the crime to which a

8    guilty plea is being entered may require a mandatory minimum

9    term of imprisonment of at least 15 years depending on the

10   nature of the Defendant's prior criminal history.

11         Further, as to Count III, possession of a firearm in

12   furtherance of a drug trafficking crime, understands that the

13   maximum is up to life imprisonment, a fine of not more than

14   $250,000, or some combination of both imprisonment and fine,

15   and further, a period of supervised release of not more than

16   five years, and additionally, that the Defendant understands

17   that as to Count III, it requires a mandatory minimum term of

18   imprisonment of at least five years and that any sentence

19   imposed as to Count III shall run consecutive to any sentence

20   imposed as to Count I and II, and also, a special mandatory

21   assessment of $100 per count for a total of $300.

22   Q    (By The Court) Did you hear everything that Mr. Bert just

23   said regarding the ranges of punishment for each count?

24   A    Yes, Your Honor.

25   Q    And is there anything that he said that surprised you in

17

1   any way?

2   A    No, Your Honor.

3   Q    All right.  Very well.  Is anybody forcing you to plead

4   guilty today, Mr. Reed?

5   A    No, Your Honor.

6   Q    Has anyone threatened you in order to get you to plead

7   guilty?

8   A    No, Your Honor.

9   Q    Has anyone promised you anything in exchange for your

10  plea of guilty?

11  A    No, Your Honor.

12  Q    Has anyone threatened any close friends or family members

13  of yours in order to get you to plead guilty today?

14  A    No, Your Honor.

15  Q    Have any of your friends or family members forced you to

16  plead guilty or promised you anything to plea -- in order to

17  get you to plead guilty in any way for any purpose?

18  A    No, Your Honor.

19  Q    Are you then pleading guilty voluntarily and of your own

20  free will because that's what you want to do?

21  A    Yes, Your Honor.

22  Q    All right.  And in relation to that plea of guilty,

23  Mr. Reed, I made a reference to the Plea Agreement when we

24  started, and the last page of that document has your name in

25  print with a signature above it.  Is that your signature?

18

1  A     Yes, Your Honor.

2  Q     And before you signed the document, did you review it in

3  its entirety with Mr. Sison?

4  A     Yes, Your Honor.

5  Q     And as result of that, are you satisfied that you

6  understand everything in the Plea Agreement?

7  A     Yes, Your Honor.

8  Q     Do you have any questions about anything in the Plea

9  Agreement?

10  A     Excuse me?

11  Q     Excuse me.  Do you have any questions about anything in

12  the Plea Agreement?

13  A     No, Your Honor.

14         THE COURT:  For the record, Mr. Bert, would you tell

15  us what the substance of the Plea Agreement is to be sure

16  we're all on the same page?

17         MR. BERT:  Your Honor, the Plea Agreement is

18  specified in paragraph 2A on page two of the Plea Agreement,

19  and in exchange for the Defendant's voluntary plea of guilty

20  as to Counts I, II, and III, the office of the United States

21  Attorney for the Eastern District of Missouri agrees not to

22  file enhancements pursuant to Title 21 United States Code §

23  851 and Title 21 841 -- United States Code -- Title 21 United

24  States Code § 841(b) and that no further federal prosecution

25  will be brought in the district relative to the Defendant's

19

1   activities on August 29th, 2009, relative to the Defendant's

2   possession of more than 50 grams of cocaine base with the

3   intent to distribute, being a previously convicted felon in

4   possession of a firearm, and possession of a firearm in

5   furtherance of a drug trafficking crime of which our office is

6   aware at this time.  Further, the Defendant is -- as specified

7   on page 3, paragraph C, he's waiving certain rights relative

8   to his appeal, including his right to appeal nonsentencing

9   issues and sentencing issues relative to the sentence in this

10  case.

11  Q    (By The Court) Did you hear everything that Mr. Bert just

12  said?

13  A    Yes, Your Honor.

14  Q    Is there anything that he just said that surprised you in

15  any way?

16  A    No, Your Honor.

17       THE COURT:  All right.  The Court will then approve

18  of the Plea Agreement as outlined.

19  Q    (By The Court) Has anybody, Mr. Reed, given you any

20  particular prediction or promise as to exactly what your

21  sentence is going to be from me in this case?

22  A    No, Your Honor.

23  Q    And, again, you understand that whatever it is is

24  entirely up to me?

25  A    Yes, I do, Your Honor.

20

1    Q    And knowing that, do you still want to go ahead with your

2    plea?

3    A    Yes, Your Honor.

4         THE COURT:  Mr. Bert, would you tell us then what the

5    evidence would have been if the matter had gone to trial that

6    would establish a factual basis for the charge, the relevant

7    conduct of the Defendant, and a basis upon which one might

8    conclude Defendant was guilty beyond a reasonable doubt?

9         MR. BERT:  Your Honor, at trial, the Government would

10   prove beyond a reasonable doubt that on or about August 29th,

11   2009, detectives from the St. Louis Metropolitan Police

12   Department obtained a search warrant relative to narcotics

13   trafficking at 8429 Lowell Street, located in the Eastern

14   District of Missouri, more specifically, in the city of

15   St. Louis.  Officers responded to the address to execute the

16   search warrant, and during the execution of that warrant, they

17   located a large quantity of cocaine base, crack cocaine, a

18   nine millimeter semi-automatic pistol, a .38 caliber pistol, a

19   digital scale, plastic baggies, a bowl containing suspected

20   crack cocaine, several rounds of 7.62 millimeter ammunition, a

21   Ruger semi-automatic pistol, and an SKS assault rifle.  All

22   evidence was seized by the St. Louis Metropolitan Police

23   Department and sent to the St. Louis Metropolitan Crime

24   Laboratory for analysis.  Analysis of the narcotics seized

25   revealed that they were in fact 69.04 grams of cocaine base or

1  crack cocaine, a Schedule II narcotic controlled substance

2  drug.  Said amount represents the total amount of crack

3  cocaine which was seized at the home of the Defendant.

4        Expert testimony would establish that the items

5  seized and the amount of cocaine base located is consistent

6  with the illegal distribution of narcotics.  Analysis of the

7  firearms revealed the firearms to be a Smith & Wesson

8  semi-automatic pistol, Model SW9VE, nine millimeter caliber,

9  serial number PAE9169, a Ruger semi-automatic pistol, Model

10  P95, nine millimeter caliber, serial number 316-86357, a

11  Smith & Wesson revolver, Model 10-5, .38 caliber, serial

12  number D518170, and a China make semi-automatic rifle, Type

13  56, SKS model, 7.62 by .39 millimeter caliber, serial number

14  R7025.  All firearms were test fired and found to be fully

15  functional and to operate as designed, and prior to the

16  Defendant's possession of the firearms, all had previously

17  been shipped or traveled in interstate or foreign commerce.

18  Expert testimony would establish that the Defendant possessed

19  the above-referenced firearms for protection and to facilitate

20  drug distribution.

21        An inquiry into the Defendant's criminal record

22  revealed that prior to August 29th, 2009, the Defendant was

23  convicted of multiple felony offenses as set forth in the

24  Pretrial Services Report, all punishable by a term of

25  imprisonment exceeding one year.

22

1   Q    (By The Court) Did you hear all of those facts as stated

2   by Mr. Bert?

3   A    Yes, Your Honor.

4   Q    And with regard to Count I, are all of those facts true

5   and correct?

6   A    Yes, Your Honor.

7   Q    Do you then agree and admit regarding Count I that you

8   possessed cocaine base?

9   A    Yes, Your Honor.

10  Q    Do you also agree and admit that you knew that you

11  possessed cocaine base?

12  A    Yes, Your Honor.

13  Q    Do you further agree and admit that you intended to

14  distribute some or all of the mixture or substance containing

15  cocaine base?

16  A    Yes, Your Honor.

17  Q    And do you also agree and admit that the mixture or

18  substance containing cocaine base involved in the offense was

19  in excess of 50 grams?

20  A    I guess it was, yeah.

21  Q    How do you plead regarding Count I?

22  A    I plead guilty.

23  Q    With regard to Count II, are all of the facts as stated

24  true and correct?  Count II?

25  A    Yes, Your Honor.

23

1    Q    Okay.  Do you then agree and admit that you, prior to

2    your possession of the firearms, had been convicted of a state

3    felony offense which was punishable by imprisonment for a term

4    exceeding one year under the laws of the state of Missouri?

5    A    Yes, Your Honor.

6    Q    Do you also agree and admit that you knowingly possessed

7    those firearms?

8    A    Yes, Your Honor.

9    Q    Do you further agree and admit that the possession of

10   those firearms was in or affecting interstate commerce, that

11   is, the firearms had been transported across state lines

12   before your possession?

13   A    I didn't know.  I don't know.  I guess it was.  I mean --

14   Q    All right.  Well, you understand that one of the elements

15   that the Government would have to prove at trial would be that

16   they had been transported across state line sometime before

17   your possession, they would prove that as established by

18   Mr. Bert that the weapons were not manufactured in the state

19   of Missouri?

20   A    Oh, yeah, I guess.

21   Q    All right.  How do you plead regarding Count II?

22   A    I plead guilty.

23   Q    And with regard to Count III, are all of the facts as

24   stated by Mr. Bert true and correct?

25   A    Yeah, yes, Your Honor.

24

1  Q    Do you then agree and admit that as to Count III that you

2  committed the crime of knowing and intentionally possessing

3  with the intent to distribute a mixture or substance

4  containing cocaine base, a Schedule II controlled substance,

5  to another person as set out in Count I of the indictment?

6  A    Yes, Your Honor.

7  Q    Do you also agree and admit that in furtherance of the

8  commission of possession with the intent to distribute a

9  mixture or substance containing cocaine base you knowingly

10 possessed one or more firearms?

11 A    Yes, Your Honor.

12 Q    How do you plead regarding Count III?

13 A    I plead guilty, Your Honor.

14      THE COURT:  Do you know of any reason, legal or

15 otherwise, Mr. Sison, why I should not accept your client's

16 pleas of guilty in this matter?

17      MR. SISON:  No, Your Honor.

18      THE COURT:  Mr. Bert?

19      MR. BERT:  No, Your Honor.

20      THE COURT:  Let the record then reflect that the

21 Court will enter its order and findings that the Defendant is

22 entering each plea of guilty knowingly, voluntarily, and of

23 his own free will, with full understanding of the nature and

24 consequences of his plea, and furthermore that he is knowingly

25 and voluntarily waiving his right to a trial by jury and all

25

1   rights incident thereto as to each Count I, II, and III,

2   further finding that the Defendant is fully cognizant of the

3   range of punishment applicable to each count.  The Court,

4   therefore, accepts the Defendant's pleas of guilty as to

5   Counts I, II, and III and enters its order and finding that

6   the Defendant is guilty beyond a reasonable doubt as to Count

7   I, Count II, and Count III.  A Presentence Investigation

8   Report will be ordered, and sentencing will be set for

9   September the 8th at 10:45 a.m.  Anything further, Mr. Sison?

10           MR. SISON:  Just one, Your Honor.

11           THE COURT:  Yeah.

12           MR. SISON:  Just a clarification on the Plea

13  Agreement.  The Plea Agreement between the Government and the

14  defense says that no request for a non-Guideline sentence can

15  be made without the consent of both parties.  The Government

16  and defense have agreed that the defense may request a

17  non-Guideline sentence but no lower than 240 months.

18           THE COURT:  Okay.

19           MR. BERT:  That's correct.

20           THE COURT:  Good enough.  All right.  Other than

21  that, anything else?

22           MR. SISON:  That would be it.

23           THE COURT:  Mr. Reed, we'll see you back on September

24  the 8th then.  We'll be in recess.

25           (Proceedings concluded at 12:41 p.m.)

26

<u>CERTIFICATE</u>

       I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

       I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

       I further certify that this transcript contains pages 1 through 25 inclusive.

       Dated at St. Louis, Missouri, this 4th day of May, 2011.


_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter