1

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MISSOURI
 2                        EASTERN DIVISION


 3


 4   UNITED STATES OF AMERICA,    )
                                  )
 5        Plaintiff,              )
                                  )
 6        v.                      )No. 4:09-CR-00572 HEA
                                  )
 7   ANTOINE S. REED,             )
                                  )
 8        Defendant.              )


 9


10                       SENTENCING HEARING

11             BEFORE THE HONORABLE HENRY E. AUTREY
                  UNITED STATES DISTRICT JUDGE

12


13                       JANUARY 24, 2011


14


15   APPEARANCES:

16   For Plaintiff:      Michael A. Bert, Esq.
                         OFFICE OF U.S. ATTORNEY
17                       111 South Tenth Street, 20th Floor
                         St. Louis, MO  63102
18
     For Defendant:      Gilbert C. Sison, Esq.
19                       ROSENBLUM AND SCHWARTZ
                         120 S. Central Avenue, Suite 130
20                       Clayton, MO  63105

21   REPORTED BY:        ANGELA K. DALEY, CSR, RMR, FCRR, CRR
                         Official Court Reporter
22                       United States District Court
                         111 South Tenth Street, Third Floor
23                       St. Louis, MO  63102
                         (314) 244-7978
24

25       PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
</pre>

2

1                     **(PROCEEDINGS STARTED AT 12:50 P.M.)**

2      **(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH**

3                        **THE DEFENDANT PRESENT.)**

4           THE COURT: This is the matter of United States of

5 America versus Antoine S. Reed, case number 4:09-CR-572 HEA.

6 The matter is now before the Court for purposes of sentencing

7 pursuant to the defendant's entry of a plea of guilty to Count

8 One, possession with the intent to distribute in excess of 50

9 grams of cocaine base; Count Two, possession of a firearm

10 during and in furtherance of a drug trafficking crime; and

11 Count Three, felon in possession of a firearm. Sentencing was

12 deferred pending receipt of a presentence investigation report

13 which the Court has received and reviewed in its entirety.

14 Let the record now reflect that the defendant is now present

15 in open court with counsel, Mr. Gilbert Sison, and the

16 Government is present through Mr. Michael Bert. Mr. Sison, on

17 behalf of the defendant, are you ready to proceed?

18           MR. SISON: Yes, Your Honor.

19           THE COURT: Mr. Bert, on behalf of the Government,

20 are you ready to proceed?

21           MR. BERT: Yes, Your Honor.

22           THE COURT: Have you had the opportunity to review

23 the presentence investigation report in this matter with your

24 client, Mr. Sison?

25           MR. SISON: Yes, we have, Your Honor, and we have no

3

1    objections to the report.

2           THE COURT:  Any objections on behalf of the

3    Government?

4           MR. BERT:  None, Your Honor.

5           THE COURT:  There being no objections to the factual

6    statements set forth in the report or to the way in which the

7    drafter has applied the guidelines in their advisory capacity,

8    the Court concludes that as to Count One, the guideline range

9    is 322 to 387 months; as to Count Two, there is a mandatory

10   minimum of 60 months consecutive to other counts; and Count

11   Three also has a mandatory minimum of 15 years.  Having thusly

12   concluded, are we ready to proceed with sentencing?

13          MR. SISON:  We are, Your Honor.

14          THE COURT:  All right.  Let the record also reflect

15   that certain motions have been filed and a memorandum

16   regarding sentencing have been filed.  Do you want to address

17   those matters now, Counsel?

18          MR. SISON:  Yes, Your Honor.  I'd note that Mr. Reed

19   has -- it's up to you how you want to proceed, Judge.  I'll

20   have some non-guideline arguments that I'd like to make.

21   Obviously, we will have to address the issue of the

22   Government's motion at some point, and then I know Mr. Reed

23   has a prepared statement he'd like to make to the Court as

24   well.

25          THE COURT:  Why don't we take up the Government's

4

1   motion at this time.

2           MR. SISON:  Okay.

3           THE COURT:  Side bar.

4   **(A Bench Conference Was Held On the Record and Outside of the**

5                   **Hearing of the Courtroom As Follows:)**

6           THE COURT:  Yes.

7           MR. BERT:  The Government filed a motion pursuant to

8   5K1.1 for a downward departure from the advisory guideline

9   range, and I think it's mostly summed up in that motion the

10  nature and the extent of the defendant's assistance with the

11  Government.  Basically, it consists of him giving information

12  that led agents with DEA to identify people on a Title III

13  wire, able to identify names of people, places, and specific

14  transactions which they were able to make use of in an ongoing

15  investigation.  Further, he also gave information relative to

16  activities, illegal activities, going on over at the St. Louis

17  City Justice Center.  That matter is actually still ongoing

18  and under investigation.

19          MR. SISON:  Judge, just for the record, just to let

20  you know, he has proffered on three occasions, and each of

21  those proffers lasted for a couple of hours at least.  The

22  first proffer was at our insistence.  The second proffer was

23  at the request of one of the agents which I think led to the

24  information that was the basis of the motion, and the third

25  proffer was also at our insistence as well because he had come

5

1    into additional information about ongoing criminal activities

2    at the St. Louis Justice Center including, for example, the

3    distribution of contraband, the use of unauthorized visits,

4    conjugal visits, and whatnot, but also there was an incident

5    with a city co-defendant who was trying to pass him a letter

6    to get to someone in the federal pod -- basically like an

7    obstruction of justice trying to silent the witness -- and he

8    informed the Government of that.  I don't know what's come of

9    that.  Obviously, I'm pretty sure that information was

10   forwarded to the City Circuit Attorney's Office.

11          That being said, Judge, you know, the Government did

12   not make a recommendation as to the number or what the

13   appropriate departure should be, but if we just took it from

14   the advisory guideline range at 322, historically speaking,

15   it's been my experience, Judge, my limited experience, that

16   when any defendant has given information, usually on average,

17   it's, you know, more or less around 30, 33 percent.  If you

18   just use that little number as a rule of thumb, 33 percent off

19   the low end of that guideline range goes down to 210, which is

20   a little bit under the 20-year range.  And then obviously, we

21   believe it should be lower than that because of the

22   non-violent factors which we will address at the podium.  My

23   point is, Judge, you know, he has expressed concern because of

24   his cooperation.  I think I relayed back to the judge in

25   chambers that he's been jumped in the City Justice Center

6

1    because the thing in his PSR indicated that the Government

2    might file a 5K1.1.  Because of that, he has come up to me and

3    he has asked the Government to explore the possibility of

4    putting him into a WitSec prison.  His mother, who is still

5    out there, has been getting calls as to why he might be

6    cooperating against I think -- and Mr. Bert can correct me --

7    but I think it was Demetrius Reed that was the individual that

8    he gave information on.  Apparently it has gotten out, and his

9    mother has received phone calls as to why is he doing what he

10   is doing.  And so obviously Mr. Reed is afraid for his family

11   in addition to himself, and we think that counts for some

12   consideration in determining the appropriate departure.

13         MR. BERT:  The Government has nothing further to add,

14   Your Honor.

15         THE COURT:  All right.  Thank you.

16   **(The Following Proceedings Were Held Within the Hearing and**

17   **Presence of the Jury.)**

18         THE COURT:  Anything specifically with regard to

19   allocution, Mr. Sison?

20         MR. SISON:  Yes, Your Honor.  And I'll be brief

21   because obviously everything is outlined in the sentencing

22   memorandum.  Judge, in addition to the departure, we believe

23   the Court should also take into account the factors identified

24   in 18 USC 3553(a) and to make some consideration for a

25   non-guideline sentence; in other words, a further departure

7

1  from what a typical range would be expected from the

2  Government's motion.  A couple things I would like to point

3  out, Judge, obviously, he has a very violent history.  There

4  is no question about that.  Mr. Reed has been in trouble with

5  the law since he was 17 or 18, but if you look closely at his

6  record, I am not trying to downplay any of the things that he

7  has done and I don't think Mr. Reed is either, but if you look

8  at the time scale of when these offenses occurred, it occurred

9  when he was 17 or 18, about 12, 13 years ago, a time when he

10  left school to go live on the streets.  And why did he go live

11  on the streets?  Well, the PSR identifies several factors

12  which led him that way; in other words, the physical abuse and

13  the other abuse that he received while he was growing up.

14        Growing up, let's be honest, he didn't get much of a

15  life growing up.  You know, obviously some of that is due in

16  part to Mr. Reed and his obstinacy and his stubbornness, but

17  it's also due in large part to how he grew up.  He didn't have

18  the lifestyles that we had.  Again, we are not making excuses

19  for it, Judge.  All we are trying to say is that his criminal

20  activities must be placed in that context.  You know, and

21  here's what happens.  He picks up an assault first, and I

22  don't know if a lot of people know this, but, you know, his

23  capacity for doing bad things but also doing things that show

24  some rehabilitation is also pretty evident.  The first thing

25  he did when he got out of prison -- he relayed this story to

8

1    me in our many conversations -- but he relayed the story to me

2    how he sought out the person that he had assaulted, and he

3    apologized to her.  Not a lot of defendants do that.  Not a

4    lot of defendants have that cognizance to reach out to someone

5    that they had affected, a victim that they affected, and to

6    reach out and say, look, I'm sorry for what I have done to

7    you, it wasn't what I wanted to do -- I mean, I apologize for

8    what I did.  He clearly has anger management issues, Judge.

9    There is no question about that, but he's never been

10   conditioned to respond any other way other than violence.  His

11   mother had a noted anger problem.  He had an anger problem.

12   You know, that's the only way he knows how to associate and

13   deal with people.

14          And if you think about it, Judge, you know, he picks

15   up the assault first, he gets probation on an assault first

16   and trafficking, and then literally four and five months

17   later, he picks up his second and third trafficking charge,

18   which basically for lack of a better term demolishes him

19   because it puts him in prison for ten years.  So since 17,

20   he's been in prison.  He got out in '08, September of '08 if

21   I'm not mistaken, on parole, and then his supervision was

22   completed sometime in '09, and he picked up the instant

23   offense I believe in August of '09, and since then he's been

24   incarcerated ever since.  So this gentleman who is now age 30,

25   from the time that he is 17 to now 30, he's only experienced

9

1   11 months outside of a jail setting.  And let's be honest, his

2   time in the Missouri Department of Corrections aside from a

3   GED was not for lack of a better term productive.  I mean, the

4   PSR notes that he was not given any type of substance abuse

5   treatment while in the DOC, even though there were records

6   showing that he had cannabis problems in a juvenile detention

7   facility.  When he got out on parole, he wasn't even put on

8   community supervision, wasn't required to drop, wasn't

9   required to do any drops.  The problem is, he actually got

10  exposed to heroin while in the DOC, which further led him --

11  he got addicted, and he stated in the PSR that he used it

12  every day until he was arrested.

13          So, of course, what does he do?  What does he do when

14  he gets out to perpetuate his addiction?  He sells drugs.

15  Unfortunately for him, it destroyed him because that

16  additional offense given his criminal history makes him a

17  career offender, and because he is a career offender, he is

18  looking at 322 to 367 months.  322 months, the low end of that

19  range, represents 27 years, 27 years.  I'm not saying that

20  Mr. Reed shouldn't be punished, he should.  Any sentence that

21  you give him should reflect, you know, enforcement of the law

22  and should reflect just punishment, but by the same token, it

23  gets to a point where it gets to be too much.  What will a

24  15-year sentence or a 13 or 14-year sentence accomplish that a

25  27-year sentence won't?  You know, they're both lengthy.  He

10

1   is going to be incapacitated for a lengthy period of time.

2   And if anything, Judge, if anything, he actually hopefully

3   will get better treatment in the BOP than he did in the DOC.

4          Here's what he needs.  He obviously needs mental

5   health treatment.  He obviously needs substance abuse

6   treatment, and he probably needs some sort of psychiatric

7   counseling to deal with his anger issues and the multiple

8   issues that were identified in the presentence report.  So

9   hopefully the criminal justice system won't fail him.  I mean,

10  the criminal justice system can't just be about punishment

11  because that is really what we focus on all the time is how

12  much time can we put him in jail when it doesn't really

13  resolve the root cause of the problem.  What caused the

14  criminality in the first place.  Can we do anything to

15  rehabilitate him.  Are we going to make any efforts to focus

16  on rehabilitation.  If there is no efforts like that, Judge,

17  then there is no justice.  Justice cannot be about punishment

18  alone.  It must be also about rehabilitation.  You know, and

19  given the circumstances that he's been dealt with, given the

20  cards that he was dealt with, you know, I don't think it's

21  that far of a stretch to be asking what we are asking for

22  here.  It's still a significant term.  It's still a

23  significant sentence.  He is going to be locked away for a

24  long period of time.  So in terms of -- I mean, if he is not

25  going to learn anything in 13 or 14 years, then he is never

11

1   going to learn.  He is not going to learn in 20 or 27.  That

2   is the point.  What's the minimally sufficient sentence to

3   impose.

4          Maybe what we should do is look at it from another

5   perspective.  Maybe we should say, you know what, all this

6   time, aside from the first judge that sentenced him to his

7   assault first and gave him probation, maybe what he needs is a

8   little bit of light at the end of the tunnel.  Maybe, you

9   know, because he's turned the corner and I think the

10  Government's motion indicates that, and I think I've

11  identified a couple of reasons why I believe he's turned the

12  corner, maybe we should give him some hope, some faith; in

13  other words, give him the benefit of the doubt.  If you impose

14  what we're requesting, he'll be getting out when he's 42 or 43

15  or 44.  If that's not going to teach him, then nothing will

16  obviously, and obviously if he picks up another case, he's

17  gone for life.  We all know that.  Maybe what he needs is some

18  semblance of hope, someone to place some trust in him, to

19  believe in him that maybe, just maybe, you might have turned

20  the corner, and because of that, I will give you the light at

21  the end of the tunnel.  I will give you the break that you

22  need.  It's still significant, but by the same token hopefully

23  you will get help, and hopefully you can make some sort of

24  productive life out of yourself.

25          I mean, look, you know I've been in front of you and

12

1   in front of judges in this district all the time.  Every

2   defendant that I represent, I provide them this 256-page list

3   of things that you can get in BOP.  In the four years that I

4   have worked with Scott, not one defendant has come back to me

5   and said, Yeah, you know, I liked that program over at FCI so

6   and so, or yeah, I liked that program at FCI so and so.  When

7   I visited Mr. Reed last night, I gave him this document about

8   two weeks ago right before he was sentenced, and I came back,

9   and he actually had a whole list of things that he wanted to

10  do.  FCI Reno had an electrician's class.  FCI Greenville had

11  a business class.  He identified four or five facilities which

12  unfortunately I was sort of, you know, I would love to get you

13  in FCI Reno, I am just not sure if you are going to qualify

14  for that, and I don't control what the BOP does, and even if

15  you made the recommendation, there is no guarantee he is going

16  to get there either, you know.

17          The point is, Judge, is that there is at least some

18  hope for him, you know.  I mean, I don't think we should just

19  throw away the key.  That's the easy solution.  I mean, the

20  easy solution to protect the public, throw him away for 20

21  years.  Fine.  You know, we don't have to deal with him.  But

22  is that the right solution is the question this Court has to

23  answer.  That's all I'm asking, Judge, is you take into

24  consideration his circumstances.  I'm not trying to make

25  excuses for his past.  It's a bad one, no question about it,

13

1    but by the same token, I think he produces some hope that he

2    actually might be able to make something of himself.  And I

3    can tell you that a lot of defendants, sometimes I believe

4    that they can do it, more often times I don't think they can.

5    He is one of the ones, you know, dealing with him day in and

6    day out over the past two years in dealing with this case I

7    think actually might have a shot.  And I told him, you know, I

8    don't make this promise to any defendant, but I told him that

9    when he gets out of prison, whenever that might be, you know,

10   despite his violent past, despite what I know of his character

11   and his history, I told him if you're ever having a problem

12   finding a job, call me, and I'll do something to help you out.

13   I don't do that for everybody.

14        You know, I'm going to have three kids soon, you

15   know, and, you know, I am totally comfortable with Mr. Reed

16   despite knowing of his past, and all I ask is -- I can't

17   explain to you how I've been able to develop a relationship

18   over the past couple years that I have, but all I'm asking,

19   Judge, is I feel comfortable with him.  I think he can make

20   the change.  He's going to have some words to say to you that

21   hopefully will lead you to think or at least give you some

22   pause for thought as to whether he actually can make that

23   change, and I am hoping that you will at least take that into

24   consideration in handing out a just and fair punishment.

25        THE COURT:  All right.  Mr. Bert.

14

1          MR. BERT:  Your Honor, just to review his prior

2     criminal record, the best way to sum it up would be a history

3     of violence, which he has assault first convictions and also

4     his history of selling drugs.  I mean, he's got a prior for

5     second assault I believe and then also one for assault in the

6     first degree and armed criminal action, and I believe the rest

7     are all involved in the sale of narcotics.  And he talked a

8     great deal of time about let's not throw away the key, lock

9     him up and throw away the key.  I mean, that's not really what

10    the Government is requesting here.  Had we been requesting

11    that, we would have filed the enhancements under 851, which I

12    believe would have mandated a life sentence, so that is not

13    what we are requesting.  We, of course, would certainly make

14    the request for a fair and reasonable sentence that would,

15    number one, protect the community from Mr. Reed and the drug

16    sales and the violence while he has a sufficient amount of

17    time to get whatever treatment or help or rehabilitation he

18    may need, and that may require a much longer period of time

19    for which he's been incarcerated in the past.  So we've made

20    arguments at side bar, but certainly, Your Honor, the

21    Government respectfully requests that you take into

22    consideration the nature of his prior criminal history and

23    sentence him to a just term.

24          THE COURT:  Mr. Reed.

25          THE DEFENDANT:  Yes, sir.

15

1      THE COURT:  Go ahead.

2      THE DEFENDANT:  I may be a career criminal by

3  definition of law or by definition of terms; however, just as

4  you have a career in law, at some point you will retire from

5  it.  In the Bible, the Apostle Paul spent the former part of

6  his life persecuting Christians only to later become one

7  himself.  Speaking of Paul, he stated in Romans 13, "Let every

8  soul be subject to the governing authorities, for there is no

9  authority except from God, and the authority that exists are

10  appointed by God.  Therefore, whoever resists the authority

11  resists the ordinance of God, and those who resist will bring

12  judgment on themselves.  For rulers are not a terror to good

13  works but to evil.  Do you want to be unafraid of the

14  authority?  Do what is good and you will have praise from the

15  same."

16      I understand that the reason I stand before you today

17  is not because I was right, and you all, the authorities, was

18  somehow wrong, because if I was doing good, just as Paul says,

19  I would have nothing to fear, but that is not the case with

20  me.  I was wrong, and that is why I am afraid as I stand

21  before you today.  Believe it or not, most criminals don't

22  view ourselves as villains and the Government -- don't view

23  ourselves as criminals or should I say villains and the

24  Government as good guys.  Instead, most of us see ourselves as

25  good guys or just as minor villains, whereas the authorities

16

1    we view as like huge mega villains.  This makes it easier for

2    us to justify our behavior, but just as in Romans 13 says,

3    Whoever goes against the authorities goes against God, and

4    even the criminal knows that anyone who goes against God can

5    never be justified.  All of this may seem simple to you, but

6    believe it or not when God revealed this to me not long ago,

7    it really had a profound effect on me.  I mean, every word in

8    the Bible where it speaks of the wicked, I felt like it was

9    speaking about me, and all of a sudden, I understood why the

10    Government fights so hard to lock people like me up and throw

11    away the key.  But is that really the right answer?

12        Now obviously, that is not my decision to make, and

13    I'm sure it's pretty obvious what my response would be if I

14    was asked that question.  I just ask you today to please

15    before you make your decision, I ask before you make your

16    decision, ask yourself do you think I can change.  Do you

17    think that I can ever get -- do you think that I can ever get

18    it together, and if so, do you think that locking me up,

19    locking me away so long that I have nothing to come home to,

20    will be the right solution to this problem.  I understand that

21    I deserve prison at this point, but please leave me some hope

22    to a life when this is all over.  Please leave me some hope of

23    putting pieces of my life together after this is all over.

24        THE COURT:  Thank you, Mr. Reed.  Any legal cause why

25    sentence should not now be imposed?

17

1          MR. SISON:  None, Your Honor.

2          MR. BERT:  No, Your Honor.

3          THE COURT:  No legal cause having been shown why

4    sentence should not now be imposed, allocution having been

5    granted, and in consideration of the motion heretofore filed,

6    the arguments of counsel, and the matters set forth in

7    defendant's sentencing memorandum, and pursuant to the

8    Sentencing Reform Act as well as the provisions of 18 USC

9    3553(a), it will be the order and judgment of the Court that

10   as to Count One, defendant be remanded to the custody of the

11   Bureau of Prisons for a term of 160 months; as to Count Two,

12   defendant be remanded to the custody of the Bureau of Prisons

13   for a term of 60 months; and as to Count Three, a term of 160

14   months.  The sentences imposed in Counts One and Three are to

15   be run concurrently for a total of 160 months.  The sentence

16   imposed in Count Two is to be run consecutively to the

17   sentences in One and Three for an aggregate sentence of 220

18   months.

19          Upon release from the Bureau of Prisons, the

20   defendant will be placed on supervised release for a term of

21   five years as to each count to be run concurrently for a total

22   of five years, and within 72 hours of release from the custody

23   of the Bureau of Prisons, defendant will report in person to

24   the probation office in the district to which the defendant is

25   released.  However, while in the custody of the Bureau of

18

1    Prisons, it is recommended that the defendant be evaluated for

2    participation in the residential drug abuse program if that is

3    consistent with Bureau of Prisons policies.  While on

4    supervision, the defendant will comply with the standard

5    conditions of the Court and the following additional

6    conditions:

7            Number one, defendant will refrain from any unlawful

8    use of a controlled substance and submit to a drug test within

9    15 days of commencement of supervision and at least two

10   periodic drug tests thereafter for use of controlled

11   substances.  Second, the defendant will participate in a drug

12   or alcohol abuse treatment program approved by the United

13   States Probation Office which may include substance abuse

14   testing, counseling, residence in a Community Corrections

15   Center, residence in a Comprehensive Sanctions Center,

16   Residential Re-Entry Center, or inpatient treatment in a

17   treatment center or hospital.  Defendant will pay for the

18   costs associated with substance abuse services based on a

19   co-payment fee established by the United States Probation

20   Office.  Copayments will never exceed the total costs of

21   services provided.  Third, defendant will submit his person,

22   residence, office, or vehicle to a search conducted by the

23   United States Probation Office at reasonable times and in a

24   reasonable manner based upon reasonable suspicion of

25   contraband or evidence of a violation of a condition of

19

1    release.  Defendant will warn any other residents that the

2    premises may be subject to searches pursuant to this

3    condition.

4           Fourth, defendant will participate in a mental health

5    program approved by the United States Probation Office.

6    Defendant will pay for the costs associated with the services

7    provided based on a co-payment fee established by the United

8    States Probation Office.  Copayments will never exceed the

9    total costs of services provided.  The Court further concludes

10   that the defendant does not have the ability to pay a fine,

11   and lastly, it is further ordered that the defendant pay to

12   the United States a special assessment of $100 as to each

13   count, One through Three, inclusive for a total of $300 that

14   will be due immediately.  Anything further, Mr. Sison?

15          MR. SISON:  Judge, given his lack of educational

16   training, there are a couple of facilities that I would like

17   the Court make some non-binding judicial recommendation to.

18   The first is FCI Reno, the second is FCI Butner, the third is

19   FCI Florence, and fourth is Fort Dix.  And obviously, these

20   are facilities that he's identified where there are particular

21   trade vocations that he could take advantage of to give

22   himself some sort of skills once he is released from prison.

23          THE COURT:  It will be the further order of Court by

24   way of recommendation to the Bureau of Prisons that the

25   defendant be considered for placement at one of the following

20

1  facilities:  FCI Reno, FCI Butner, FCI Florence, or in the

2  alternative to those three, the facility at Fort Dix.

3  Anything else?

4          MR. SISON:  Nothing further from the defendant, Your

5  Honor.

6          THE COURT:  Anything further on behalf of the

7  Government?

8          MR. BERT:  No, Your Honor.

9          THE COURT:  Having sentenced you accordingly,

10  Mr. Reed, it is now my obligation to inform you of your rights

11  regarding appeal.  You may appeal the sentence and judgment in

12  this case, but you have to do that within 14 days of the date

13  of the sentence and judgment.  That means within 14 days of

14  today's date.  If you do not file your appeal before that 14

15  days runs out, then you will have given up your right to

16  appeal the sentence and judgment.  If you cannot afford to pay

17  the costs of filing the appeal, you can request that the costs

18  be waived, and if, in fact, the costs are waived, then the

19  Clerk of the Court will file your request free of charge.  You

20  may file the notice of appeal and the appeal resulting

21  therefrom if you feel or believe that the sentence violated

22  the law in some fashion or is otherwise contrary to the law or

23  is void or voidable on its face.  I think by virtue of your

24  plea agreement in this case and, of course, your plea, that

25  you gave up all rights to appeal, and if you did maintain any,

21

1  they are limited to things that in some way relate to

2  ineffective assistance of counsel or prosecutorial misconduct.

3  Okay?  Do you understand your rights of appeal as I have

4  described them to you?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Do you have any questions regarding your

7  rights of appeal?

8           THE DEFENDANT:  No, Your Honor.

9           THE COURT:  The defendant is now remanded then to the

10  custody of the marshals to begin service of his sentence

11  forthwith.  Good luck to you, Mr. Reed.  Thank you, Counsel.

12  We will be in recess.

13            **(PROCEEDINGS CONCLUDED AT 1:20 P.M.)**

14

15

16

17

18

19

20

21

22

23

24

25

22

1                           CERTIFICATE

2

3        I, Angela K. Daley, Registered Merit Reporter and

4   Certified Realtime Reporter, hereby certify that I am a duly

5   appointed Official Court Reporter of the United States

6   District Court for the Eastern District of Missouri.

7        I further certify that the foregoing is a true and

8   accurate transcript of the proceedings held in the

9   above-entitled case and that said transcript is a true and

10  correct transcription of my stenographic notes.

11       I further certify that this transcript contains

12  pages 1 through 21 inclusive and that this reporter takes no

13  responsibility for missing or damaged pages of this transcript

14  when same transcript is copied by any party other than this

15  reporter.

16       Dated at St. Louis, Missouri, this 1st day of August,

17  2011.

18

19

20       _____
          /S/Angela K. Daley
21        Angela K. Daley, CSR, RMR, FCRR, CRR
          Official Court Reporter
22

23

24

25